## UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

| | |
|---|---|
| Scott B. Sullivan | |
| Plaintiff/Petitioner - Appellant, | Case No. 22-3117 |
| v. | Appellant/Petitioner's Opening Brief |
| University of Kansas Hospital Authority, et. Al. | |
| Defendant/Respondent - Appellee. | |

**APPELLANT/PETITIONER'S OPENING BRIEF**

**1. Statement of the Case.** (This should be a <u>brief</u> summary of the proceedings in the district court.)

The original complaint (Doc 1) in this case was filed on January 31st, 2022, seeking relief from the prior judgments under FRCP Rule 60(b) and Rule 60(d); and seeking to plead new rights to relief for new and ongoing acts and practices identical to those alleged in the three original case. The petition also sought to serve summons upon all of the unserved defendants from the prior case to seek relief for their portion of liability; and to restore the claims under State law against the diversity defendants Michelle Safford, Jonathan Alan Keck II, and Janet Gereau on the basis that they are all residents of Missouri, applying diversity jurisdiction to the state law claims for which the other dismissed defendants were not contingently necessary.

2/18/2022 an order was issued by Judge Theresa James to Show Cause why the case should not be dismissed under 28 U.S.C. 1915.

3/4/2022 I filed a Motion for Appointment of Counsel and a Motion for Extension of time to respond to the show cause order.

3/14/2022 the case was reassigned to Judge Katherine Vratil.

Ten days later, on 3/24/22 my motion for appointment of counsel was denied without prejudice.

4/1/2022 I filed a Motion for a Second extension of time to respond, being still unable to write a response that I felt would meet the technical standards of the court due to my ongoing and escalating disabilities.

4/4/2022 I filed the best response that I could, having not yet heard a ruling on the Motion for extension of time.

4/6/2022 my Motion for extension was granted, mooting my first response to the show cause order, and granting me until 5/4/2022 respond properly.

On 5/ 6/2022,. Still deeply affected by escalating symptoms which would put me in the Emergency Room ten days later, I filed what was the best response that I was physically and psychologically able to produce.

On 5/24/2022 the case was dismissed for failure to state a claim. The reasons for dismissal were mostly related to my inability to write complete pleadings and proper responses in briefs:

On 6/21/2022 I filed a Motion for Relief under Rule 59(e) explaining how the court had misconstrued many of my arguments and admitting again that my disabilities prevented me from writing anything more completely or competently. My disabilities are extreme and in many ways specific to the tasks of litigation; especially the psychological trauma accumulated over nearly eleven years. My physical disabilities are more generally crippling, with me having been rated at 88% functional impairment by Dr. Estaban Azevedo as far back as September of 2014.

On 6/28/2022 my second Motion for Appointment of Counsel was denied.

Please keep in mind that as of 6/28/2022 I did still have rights under Rule 59, Rule 60, and appellate rights; even though my original complaint was dismissed. Preserving and restoring my rights under these Rules was even more important after my claims were dismissed as those are now the only rights that I have left to restore my access to medical care..

 And in light of my disabilities and my proven inability to write proper pleadings, motions and briefs; I still needed counsel  to preserve these substantial legal rights.

And this is a point often the victim of an unjust ruling still has legal rights under our systems of justice. Those rights might only be preserved with professional counsel; and this is even more apparent when a disabled man has just suffered dismissal of his claims because he could not write them and brief them properly in the first place.

This demonstrates the importance of the fact that the second denial of counsel was ordered in between judgment and Rule 59.  I had already proven myself incapable of defending my own rights when the second denial of counsel was made.

I did file a second Motion for appointment of counsel asserting these rights and arguments prior to the Report and Recommendations regarding my Motion for Relief under, which was filed by Judge James on 9/6/2022.

I filed again the best response to the Recommendation to Deny my Rule 59 Motion as I could on 9/20/2022.

The Motion for relief Under Rule 59 was denied on 10/24/2022. And the abatement of the appeal was lifted on 10/26/2022.

Since that time I have attempted to write legal briefs every single day, with even more significant failures as my symptoms have not only escalated but also expanded to now affect my arms, hands, neck and face. This led to the discovery that I also have an additional cyst in the cervical spine which was never revealed to me until  I reviewed the MRI imaging myself. But as a result of this cyst becoming symptomatic during the course of these proceedings, I now not only suffer all of the symptoms identified in my original petitions but similar and even more frightful symptoms in my face neck and arms and hands.

 At this point, the most important right to relief requested among all of my cases is civil appointment of counsel, as there is absolutely no way that I will be able to preserve my own rights while suffering such debilitating symptoms and escalations to my symptoms which are attributable to the overexertion and repetitive trauma to my spine from the tasks of litigation themselves.

But there are also very substantial disputes of both fact and law which I believe mitigated against dismissal, and warranted discovery, depositions, and testimony which are the only

means by which much of the relevant information required by the court

I just cannot get past the pleading stage as severely impaired as I am.

## 2. Statement of Facts Relevant to the Issues Presented for Review.

I can't do this anymore. That's the most important fact of this case.

Attempting to write these briefs has proven to me that I can no longer even attempt to defend my rights. It's too painful, both physically and psychologically. I have compulsive suicidal thoughts triggered by every attempt at legal writing due to the eleven years of litigation abuse and even the threats of murder that I have been subjected to in the defendants' attempts to cover up and dispose of these claims.

I don't know how to prove that to you, other than being allowed to file my medical records, summons witnesses and experts, and take depositions or call witnesses for in person testimony, and even give my own testimony in the presence of a judge, where my disabilities cannot just be written about and otherwise ignored; but will actually be seen and heard and cannot be denied.

 I cannot stress urgently enough the necessity of seeing a disabled person and hearing them give their testimony; as compared to just reading whatever they could write, and presuming that they could do that all day and even do it better if they just tried harder.

This is most relevant to the issues of denial of counsel, refusal to grant the presumption of truth, and the implied prejudice and bias of the judges…who appear to universally agree that my disabilities are not as bad as I say; but who also refuse to allow me an evidentiary hearing to prove the facts that they call conclusory or the allegations that they just do not believe.

You only see the best of what I am able to produce when you read my pleadings, motions and briefs. And what you see is so bad that everything that I write is dismissed. And not upon the merits, but rather upon my failure to comply with court rules and customs or my failure to even complete my pleadings before the deadlines expire; and thus I am forced to file them incomplete and spend that much more effort trying to defend them..

The implication if not the outright ruling was that the claims against The Hartford and WorkMarket arose from the same events, and therefore must have been filed when the claims against the doctors were filed in 2018 and 2019.

As the court noted, all of the present claims against WorkMarket and The Hartford et. Al arise from the *related facts* that were alleged in the first three cases—those against KU, HCA, and AdventHealth et. Al.

But those first three cases had a completely different purpose, different defendants, and different factual and legal backgrounds that were entirely unique from the claims in WorkMarket, et. Al. and The Hartford et. Al.

Also, the claims in the current University of Kansas et. Al case were intended to be both a request for relief under Rule 60 AND a pleading of new ongoing violations; plus the refiling of claims against the defendants who were never served previously; plus the refiling of claims against the out-of-state defendants for whom diversity jurisdiction still applied when the Federal Question claims were dismissed. So that is very complex to explain, and was impossible for me to plead.

I should add: I did attempt to write Motions for Certiorari within the deadline to petition for Supreme Court Review. And we do have some issues here which are appropriate for Supreme Court Review, because we have both the District Court and the Tenth Circuit following Supreme Court decisions with respect to the Civil Rights Acts and following Tenth Circuit decisions with respect to the ADA and RICO where there is disparity among the circuits and my interpretations are closer to the actual text of the statutes.

But the original series of cases which comprise the current University of Kansas Hospital Authority et. Al. cases were first filed on November 8th, 2018, which was the last day before expiration of two years since the November 8th, 2016 AdventHealth Shawnee ER Visit.

similarly, the HCA case was originally filed on January 21st, 2019, which was the last day for some statutes of limitations for the events of January 19th, 2016.

 And the first University of Kansas Hospital Authority case was filed on February 11, 2019 as soon after the HCA case as I could manage with my disabilities.

In each of these cases I argued for equitable estoppel and tolling of statutes of limitations. But there were still deadlines that I had to attempt to make in case estoppel and tolling were not granted; so I had to file these incrementally and to the best of my ability at each stage.

All of the defendants in all three cases were alleged to have committed acts and practices which interfered with my workers compensation claim (which is the subject of the WorkMarket and Hartford et. Al. cases); the claims were also individually severable, with the exception that they could be appropriately joined to apportion liability where they did directly intersect. But that does not mean that all of the defendants were all contingently necessary in any one of the cases. Even the health care provider cases could have been severed and would have been de facto severed if they were pursued under medical malpractice, which defendants argued is an exclusive remedy.

So the argument that they all had to be filed back in 2018 at the same time simply is not valid. Joinder would have been optional, and perhaps contingently necessary for some of the claims. But that was something that was expected to be litigated where so many people did inter-related harm to one single victim. Instead, the argument for necessary joinder was never made by anyone, and only raised by the judges themselves in the current Reports and Recommendations.

The primary difference between the University of Kansas, HCA and AdventHealth cases and the WorkMarket and Hartford cases is that the first three cases focused on Tarlov Cyst Disease in addition to the effects of the defendants' interference with my workers compensation claim. The issues of ADA implications for example are not relevant to the workers compensation/insurance fraud claims against WorkMarket and The Hartford.

But most importantly, before I could proceed to seek relief from ANY court against WorkMarket and The Hartford et. Al. I had to have access to health care providers who believe in Tarlov Cyst Disease.

That is still such an odd thing for me to say; but the fact is that Tarlov Cyst Disease is the only disease that I have ever heard of that the majority of doctors refuse to admit is real.

A central fact in the claims against the health care providers is that even when they do admit that Tarlov Cyst Disease is real, and even when they do inform patients that we have Tarlov Cysts; they refer us all to the exact same doctor in Dallas, TX, Dr. Frank Feigenbaum.

And when I attempted to get a consultation with Dr. Frank Feigenbaum in May of 2016 at the advice of Dr. Clough's nurse Dr. Feigenbaum's office informed me that they do not do workers compensation patients.

So, because I was injured at work and forced into the workers compensation system

through OnForce's frauds; I was at that point reduced from having one option for neurosurgery in the country to having zero options. Then as I learned more about Tarlov Cyst Disease, I found out from the Tarlov Cyst Disease Foundation that there were three doctors that they recommend; then one of them retired, which reduced my access to medical care and the medical evidence that I need back down to two. The first was Dr. Feigenbaum, who does not do work comp patients.  The second was Dr. Schrot in Sacramento, CA; and when I called them, they do not do workers compensation either.

Which brought me back down to zero doctors in the entire country who could both testify about Tarlov Cysts and treat them.

This all emphasizes two facts:
1) there is a disparate impact in availability of medical care for people with Tarlov Cyst Disease, and it does affect our access to care for things other than just for our Tarlov Cysts (the ADA argument); and

2) I was harmed in very unique ways by being forced into the workers compensation system through OnForce (WorkMarket), The Hartford and Berkshire Hathaway's frauds when I have a rare condition that only a few doctors in the entire country will treat.

Now, I have to interject some statistics on Tarlov Cyst Disease to put that into perspective. It is estimated that 5% to 9% of the population has Tarlov Cysts, but only 1% to 2% of the population has symptomatic Tarlov Cysts.

Secondly, in one retrospective study, 97.5% of people who had MRIs on which Tarlov Cysts were present were never told that they have these cysts. Only 2.5% of patients who get MRIs with Tarlov Cysts on them are ever even told. That is 1 in 40.

Therefore, there are between 3,000,000 and 6,000,000 people with symptomatic Tarlov Cysts. Those are the numbers of people who could benefit from surgical intervention.

The number of people nationwide who do get the corrective surgery is less than 300 per year.

And those whose cysts are related to a workplace injury, the numbers are estimated to be zero. Zero who get the proper medical care.

But the situation does get worse, because once you are "flagged" as a suspected opioid seeker, or malingerer or fraud, or once you are falsely diagnosed with psychosomatic

symptoms, ALL of your symptoms due to anything are presumed to also be medically unexplained or purely psychosomatic. So you are not only completely cut off from the spinal treatment that you need; you get the worst possible and often abusive medical care for every other condition that you develop as well.

As I phrased it in the original proceedings, I have been disenfranchised from medical care.

And as Dr. McCowen phrased it, according to Michelle Safford: "Oh my God. He's been flagged."

I have been flagged by health care providers to the effect that even to this day, I cannot go to a different doctor without the fraudulent medical records created by all of these doctors being used against me.

AND the overwhelming majority of doctors and other medical staff such as nurses, APRNs, and even mental health professionals have never even heard of Tarlov Cyst Disease; so I face the ongoing disparate impact upon people with Tarlov Cyst Disease that comes from the failure to properly train and supervise ANY of their medical staff. That prevents me from getting the equal benefit of medical services; including, health insurance, doctors visits, ER encounters,  or even the services of charitable health care clinics. They don't have access to surgeons to CURE me; so the only thing they can do is diagnose me and wish me luck in court.

There is a line that you may not cross; and that line is that you are not allowed to judge a person's disabilities by anything but medical science. No prejudices. No profiling. No presumptions. And when you are asked to look at the medical evidence, you do so before rending a judgment. And that applies to personal judgments as well as to judicial ones.

I have Tarlov Cysts on my sacral nerve roots at S2 and S3.

I also have herniated discs at L4-L5 and L5-S1 which were diagnosed first in April of 2012.

I have no prior history of spinal injury or any periods of chronic back pain or any other neurological symptoms.

All of the facts and even the opinion of The Hartford/OnForce's own chosen surgeon, Dr. John Ciccarelli support the conclusion that all of my spinal damage is a direct result of

my workplace injury sustained on January 9th, 2012. And before I went to KU in April of 2014, all of my doctors agreed that I needed surgery.

In addition to the herniated discs which I was informed of on April 4th, 2012 and the Tarlov Cysts which I was not informed of until October 15th, 2015; I have within the past few weeks learned that I have a condition known as "Modic Changes" which was visible on my MRI for the first time in January of 2020 but which was never revealed to me until after my new cervical symptoms began and I consulted with another neurosurgeon.

Modic Changes is very relevant to the effects of the eleven years of delays to my health care, as they are an indicator of reduced  prognosis attributable to the eleven years delay.

So this is new evidence that I did not even have until almost a full year after this case was filed; and it is new evidence that was not available until after this case was dismissed, and already pending appellate review.

But this finding was known to my doctors or should have been known to my doctors for almost two years before I found it out.

This was just another critical medical finding withheld from me by people who knew that I needed all of my medical findings not just for treatment, but also for pending litigation.

And this is the pattern which will not change except to continually get worse. I will continue to be a victim of the same practices and procedures for as long as doctors are withholding medical diagnoses from me. It doesn't even allow me the opportunity to seek other experts for cures when the local doctors all refuse to even tell me what they find on my MRIs.

 And I become less and less able to defend my rights in a court of law with every passing day, month and year. I will never be able to write as much or as well as I could four years ago. And I was not able four years ago to write as much or as well as I was for the seven years before that. And if you go back to the time before I needed medical care; I would have been able to write perfect pleadings; but I did not need to, because I was not disabled and not the victim of insurance fraud yet.

Because I was not capable of writing a Motion for Certiorari; my only hope was to seek relief from judgment. And I did honestly believe that the Rule 60 1 year deadline applied to the close of appellate proceedings; and that I have the right to relief from the appellate judgments as well. Again, Rule 60 explicitly states that it does not limit the court's

equitable power to grant relief.

 I did not wait. I did not delay. I just was never capable of writing anything that would satisfy the court; and so on the last day (I thought) that I could file a Rule 60 motion under 60(b) I filed an action that would also incorporate Rule 60(d) and my new requests for relief and new evidence of continuation of every practice alleged in the first filings.

. But because I was not capable of writing a fully compliant pleading, I did what Judge Robinson herself suggested that I should have done with respect to the original claims to avoid statutes of limitations dismissal…I filed a defective pleading in the hopes that I could get appointment of counsel to write and file a non-defective pleading.

Also because I could not do the work of retyping and reorganizing all of the factual allegations, I incorporated the prior pleadings by reference. This was to serve two purposes: 1) to incorporate those facts for Rule 60 relief; and 2) as supporting factual allegations for the new violations by the health care providers and for the continuation of the ongoing violations under the same RICO, ADA, and Civil Rights Act theories.

But, again, I could not do the writing. And even more than in the previous cases I need appointment of counsel; with the difference being that I now know that counsel is available under not just the ADA (through a deeply buried provision which I totally misunderstood at the time that the original case were filed, and during oral argument on August 6th, 2019 in the University of Kansas case); but also under 28 U.S.C. 1915 and under Abuse and Neglect of a dependent adult in the Kansas statutes. And because I know that civil counsel is available, I knew to file the proper motions; but still had severe difficulty writing them. And disputes over the basis upon which counsel was denied.

My other most severe disability is my mental health condition. I have been diagnosed with Obsessive Compulsive Personality Disorder and Major Depressive Disorder and explicitly cleared of the delusional disorders, such as schizophrenia and psychosis which has been suggested by some of the defendants.

I have compulsive suicidal thoughts; and those are particularly triggered when I am attempting and failing to write legal pleadings. This is a characteristic of OCPD which distinguishes it from OCD. With OCPD, crippling perfectionism is a common symptom; with the difference between OCD and OCPD being that an OCD person might compensate with compulsive behaviors which actually do lead to achieving perfectionism in a dysfunctional way; while OCPD sufferers are crippled by belief that they are required to perform to perfection, and therefore suffer extreme depression when they fail,

and are often deterred from even trying to the state of near catatonia.

That is the mental illness that I actually have. And that is why I am particularly susceptible to litigation abuse and to the form of PTSD known as "Litigation Abuse Syndrome."

I am sorry to be so blunt, but litigation literally makes me want to kill myself; and I have to try to overcome the compulsive suicidal thoughts every single time that I try to do legal writing to restore my rights. I am not using that as hyperbole. I literally have repetitive, compulsive suicidal thoughts every time I attempt to write anything

For clarity…the suicidal thoughts occur in between what I type on the page. I tried to make this point to the District Court…you cannot judge me only by what I write, because that only accounts for the tiniest fraction of my day.

Even though I attempt to write every day, the overwhelming majority of what I write never gets filed because it is too incomplete or inappropriate for the court. And much of what I write I never file because I am afraid of retaliation, having been threatened with murder if I did not drop my claims against OnForce, The Hartford and Berkshire Hathaway on December 15th, 2015.

The murder threat was a central issue in the claims against Michelle Safford; and I made it as clear as I felt that I safely could that those threats did not originate with Ms. Safford, but rather with lawyers and judges involved in the Kansas cases against OnForce, The Hartford and Berkshire Hathaway .

And those threats, made on December 15th, 2015 came just two months after I was diagnosed with Tarlov Cysts, and within two weeks of my request for additional medical care from The Hartford which would be necessary before we could move forward to either settle or litigate the "workers compensation" or insurance fraud claims against OnForce and The Hartford.

I was denied additional medical evaluations or treatments by The Hartford in December of 2015, which if it were found to be subject to Kansas Workers Compensation law triggered my right to seek medical care independently from privately chosen doctors and seek recovery of those fees from The Hartford and OnForce.

This is what pushed me down the path of seeking medical care, diagnostics and treatment for the Tarlov Cysts and the still untreated herniated discs through HCA through KU and

through AdventHealth; which is the entire series of events from January 19th, 2016 forward.

Because I could not get any doctor either in or out of the State of Kansas to evaluate or treat the Tarlov Cysts; I was unable to pursue an award of benefits in the Kansas Workers Compensation Court…again, even if it were found to be a valid workers compensation policy.

By rule, my workers compensation claim was subject to closure for failure to prosecute either in November of 2016, or at some later date depending upon interpretation of tolling and estoppels and the impact of their refusal to provide diagnosis or treatment when the Tarlov Cysts were discovered in October of 2015.

But there was never a motion filed by OnForce and The Hartford to close the case for failure to prosecute; so on a technicality, my workers compensation case has never officially been closed. I spoke with the Department of Labor in February of 2022 and they confirmed my case was still technically open because OnForce and The Hartford never moved to close it..

It has always been my position that I never truly belonged in the workers compensation court anyway; and that became a central issue in the WorkMarket and Hartford cases..

Initially my attorney, Melinda Young,  had the same opinion as Judge Vratil and presumably everyone else-- that because I was injured at work it was automatically subject to workers compensation jurisdiction. And it was her choice to file in the workers compensation court rather than in the District or Federal Courts under theories of fraud and racketeering.

However, when she got discovery and received documentation from OnForce confirming their policies; she differed from Judge Vratil's opinion, stating that if I wanted to pursue the fraud claims, I would have to do it outside of workers compensation.

 I've phrased that better in the past. If Judge Vratil is correct that the OnForce(WorkMarket) and Hartford cases belong in the workers compensation courts as an exclusive remedy; then my workers compensation attorney should have filed fraud claims under 44-5, 120. But if I was never rightfully subject to the workers compensation act; then my fraud claims belonged in either Federal or State Court. And because of the interstate nature of the OnForce enterprise as well as the alleged joint enterprise consisting of OnForce, The Hartford and Berkshire Hathaway et. Al and because of the

repeated acts of witness intimidation and wire and mail fraud committed by OnForce and The Hartford and Berkshire Hathaway in covering up and defending the initial fraud, RICO was absolutely the correct choice of statute to apply to those claims.

But, proving damages and disability still required resolving the access to medical care issues and particularly the discrimination surrounding Tarlov Cyst Disease.

So, even though I write it so poorly, the only legal option was to pursue my rights against the health care providers first; including my rights to declaratory and injunctive relief. Only then could I secure expert testimony and evidence needed to support my damage claims against OnForce, WorkMarket, The Hartford and Berkshire Hathaway.

All of the defendants were aware at all times of the pendency of my claims against OnForce, The Hartford and Berkshire Hathaway.

And all of the defendants demonstrated or even outright stated their anti-workers compensation motives, anti-opioid suspect motives, and anti-disability and disabled persons motives. With those who were not explicit about which one or which combination of motives they held; each of the motives was alleged as an alternative motive based upon the inferences reasonably made from the fact that they denied medical care or interfered with my medical care; but also by the way in which they denied care, such as the angry responses of Dr. Williams, Dr. Cordell, and many nurses; or the deceptive methods of people like APRN Carpenter and Dr. Prostic and others, who put up an appearance of professionalism but created patently fraudulent medical records.

## 3.    Statement of Issues.

### a.    First Issue:Appointment of Civil Counsel

Should the District Court have appointed counsel in the present cases; and should the District Court have made me aware of the availability of appointed counsel in the previous cases?

Also, should the Tenth Circuit have appointed counsel by Motion in the first set of

appeals? And Should the Tenth Circuit appoint counsel sua sponte at this juncture in light of my proven and escalating disabilities?

### Argument and Authorities:

In criminal cases, the right to appointment of counsel does not appear in The Constitution. The right to have counsel in a criminal case does appear. But the right to have counsel appointed by the court does not.

The court in all cases made the argument that while the right to have counsel is guaranteed in criminal cases, it is not guaranteed in civil cases; and therefore the arguments in support of appointment of counsel in a civil case cannot be based upon the same reasoning..

But that reasoning is flawed. There is an implied right to have counsel in a civil case as well. To my knowledge, there has never been a case where a judge ordered a person to proceed as a pro se litigant when they did have an attorney representing them. In other words, even though it is not explicit, it is unthinkable that a court would prohibit counsel in a civil case, except for small claims courts. And as to that exception, the right to appointment of counsel in criminal cases ALSO does not extend to minor infractions. So, the point is that both criminal and civil cases are subject to the essentially same rights and limitations. The omission of the right to *have* counsel in a civil case is a moot and irrelevant point.

The right to *appointed* counsel is a completely separate point. That is not in the constitution for either civil or criminal cases. In criminal cases, the right to appointment of counsel comes from the court itself in Gideon v. Wainright and is based upon the theory that a criminal defendant faces a very severe consequence…the deprivation of liberty…if they lose their rights due to lack of effective counsel

. And the more familiar "Miranda" warning which informs criminal defendants of their right to appointment of counsel comes from Miranda v. Arizona; where the court reasoned that even with an established right to appointment of counsel; police and prosecutors were still using abusive and illegal tactics because their victims did not know that they had the right to ask for an attorney. SO not only the right, but the knowledge of the right were deemed necessary to prevent wrongful deprivation of liberty..

In the civil context, the difference is that the legislature created the mechanism for appointing civil counsel before the court declared that civil counsel was a right; and before the court declared that the right to request appointment of counsel must be expressly disclosed to indigent civil litigants or else we will lose our right to request counsel solely because we do not know about it.

That is what I am asking this court to do: 1) to say that a civil litigant in certain circumstances has a right to appointment of counsel; 2) to affirm that the Congress has made provision and given authorization for said appointment of counsel; and 3) to declare that failing to inform an indigent pro se litigant of their right to apply for appointment of counsel has the same due process implications in civil cases as it has in criminal cases; and 4) to declare that my interest in medical care is equivalent to if not superior to a criminal's interest in freedom. And 5) to remand this case with an order to appoint counsel

To have denied counsel without an evidentiary hearing and without consideration of my specific disabilities, both physical and mental health disabilities; resulted in deprivation of due process, denial of equal protection, denial of trial by jury, and substantively deprived me of the right to petition the court for redress of grievances. To have denied counsel without these inquiries resulted in manifest injustice solely upon the basis of my disabilities. And manifest injustice alone is grounds for relief under Rule 60(d) as well as under Rule 59(e)as was requested in each of these cases.

As an additional note, I did specifically state that I was requesting appointment of counsel as an accommodation to my disabilities; and I made the request that way for a reason. I believe that appointment of counsel is a reasonable accommodation for disabled litigants. It is obviously not unreasonable when appointment of counsel is authorized explicitly in cases under the ADA, explicitly in cases of adult abuse and neglect in Kansas, and explicitly under 28 U.S.C. 1915 for indigent civil litigants. If the Congress already authorized it, then it cannot be argued to be an unreasonable accommodation.

As such, denying this reasonable accommodation subjects the court itself to the potential for liability under the Rehabilitation Act. Obviously, a claim under the Rehabilitation Act would be a new claim which would need to be filed as a separate case; and with even more complex requirements and procedures And as such, it is not necessary to fully plead a RA claim at this juncture There is a difference between the argument that appointment of counsel is authorized and often required to maintain the guarantees of due process, equal protection, jury trials, and right to petition for relief

of grievances; and arguing that it is a Rehabilitation Act violation NOT to appoint counsel where the court is aware that it is the disabilities of the plaintiff and the court's refusal to accommodate those which cause damages

But there is also obvious crossover in the facts and law relevant to the two distinct types of claims.

The purpose of the appeal is to prevent the damage from becoming permanent due to further delays in my medical care. It is also a more proactive course of action without the need for additional litigation. It is more efficient to address the issue in this case proactively than to force it to be litigated as yet another separate and even more complex case with possible irreversible physical damage done in the mean time.


**b.     Second Issue:**


Does Rule 54(c) prohibit dismissal under 12(b)(6) of claims which are factually and legally justiciable but which are poorly written by a disabled pro se litigant?

Did Plaintiff plead enough facts to reasonably infer that the defendants are liable for the acts and practices alleged and to serve notice of the grounds for the claims against them?

**Argument and Authorities:**

Rule 54(c) mandates that all parties be granted the relief to which they are entitled, whether asked for in the pleadings or not.

There has never been a direct interpretation and application of Rule 54(c) that I can find, other than its other application to attorneys' fees. As to the phrase "whether asked for in the pleadings or not" there is a parallel in the Connelly standard for 12(b)(6) dismissals which states that a case may not be dismissed if the facts alleged give rise to relief under any legal theory. The point is that if the facts give rise to relief, discovery should proceed and amendment of the pleadings should be liberally granted so as to do justice; and it is not prejudicial to the defendants so long as they receive notice sufficient to formulate their response.

All of the defendants received sufficient notice from my pleadings to formulate their

responses; even though my pleadings were incomplete, poorly organized and rambling.

**c.       Third Issue:**

Was Achcroft v. Iqbal and Bell Atlantic V. Twombly inappropriately applied vis-a-vis the "conclusory allegations" judgments and different factual and legal standing between the parties in this case?

Did this application result in judgments of fact which deprived me of the right to try such issues to a jury?

**Argument and Authorities**

While Ashcroft v. Iqbal and Bell Atlantic v. Twombly had the effect of tightening pleading standards; the subject matter of those actions makes the standard much more limited in its application that what it has evolved to be.

In Ashcroft v. Iqbal, you had government agents at the top of a hierarchy of tens of thousands of subordinate agents being held liable for the actions of the street level agents. It was implausible to believe that they had prior knowledge and direct control over the torture which Iqbal was subjected to. And there was a high burden of sovereign immunity to overcome, especially in a time or war and with a plaintiff, Iqbal, who was initially detained for immigration violations which were a valid basis for his arrest. The unique issues following the September 11th attacks and the possible links to foreign terrorists gave Ashcroft a level of presumed immunity that would not apply to a private corporation in a racketeering case. At the very least, the level of supporting allegations to round out the inferences for conclusory allegations would be much lower in almost ANY case than it was in Ashcroft v. Iqbal.

And as to Bell Atlantic v. Twombly, there was a very plausible "parallel action" defense against the allegations of conspiracy and price fixing which also gave that case a higher burden to overcome than would be expected in a case such as this where the issue is not collusion to fix prices, but is conspiracies to obstruct medical care, benefits and justice with respect to an injured worker and a facially illegal insurance scheme; and conspiracies against the disabled generally and against those with Tarlov Cyst Disease specifically.

The fact that pervasive discrimination on the basis of disability exists in all aspects of life, including litigation,  has statutory support, via the Congressional findings at the beginning of the ADA, in contrast to price fixing among competitors, which is relatively rare, and very often is found to be merely the effect of market forces that wrongly appear to be collusion..

Market forces do not explain parallel acts of discrimination like they explain parallel pricing. In fact, the opposite is true. Where the parallel behavior is discrimination it is more likely that the defendants mutually agreed to engage in an illegal act since acting out of discriminatory animus is, in most cases, illegal. But setting prices is not inherently illegal; so the burden to prove both the motive and an illegal outcome is higher with an anti-trust conspiracy case.

while Twombly might be closer to the facts of this case; it is still very much different because the defendants here are not accused of conspiring to do something that otherwise would have been legal. They were all doing something illegal, and the timing and inter-relatedness of their actions, the sharing of falsified medical records and the admitted animus by some to obstruct my workers compensation or other claims against OnForce, The Hartford and Berkshire Hathaway was inherently illegal,. Thus by its very nature, these claims have a lower burden of pleading from which liability. may be inferred.

Even without appointment of counsel, and even with the pleadings in their incomplete and disorganized state, they still include sufficient factual allegations to make every inference that the court eventually labeled as "conclusory". At the very least, they supported reasonable enough inferences to allow discovery to go forward. And in my view, a dismissal is exactly the type of "other judgments" that Rule 54(c) refers to. So even with a poorly written pleading, the judgment must grant me the relief to which I am entitled whether asked for in the pleadings or not.  Dismissal, therefore, requires an absolute ruling that I am not entitled to any relief under any theory; much more akin to the Connelly standard which controlled prior to Twombly and Iqbal.

### d.    Fourth Issue: Prejudice and Bias

Did Judge Vratil and the various magistrates who wrote the Show Cause Order and Report and Recommendations, and who entered the orders on interlocutory issues such as appointment of counsel, demonstrate prejudice and or bias?

Was such prejudice and or bias incited by the fraudulent arguments of the defendants?

### Argument and Authorities:

I phrased it that way because I believe that prejudice and bias were a significant factor in the court's judgments; and I believe the judges demonstrated that in their accusations of frivolous or vexatious litigation; particularly in light of their awareness of my disabilities and the evidence filed in each of the cases proving my disabilities and proving the widespread discrimination both against the disabled generally and against those with Tarlov Cyst Disease specifically, and against workers compensation claimants perhaps most of all.

But I also believe that the judges' prejudices and biases against me were elicited by the defendants and their counsel as acts of fraud upon the court and as tactics to exploit both my disabilities And to exploit the acknowledged prejudice and discrimination against the disabled. And because I was not afforded discovery, I could not refute the false allegations that were fraudulently prejudicing the court.

It was at this point that the defendants crossed the line from committing their frauds and other violations solely against me, to committing fraud upon the court. But the fraud upon the court allegations did not mature until the court took action detrimental to me; which is both unfortunate and expected with tactics which incite prejudice, because by the time that you have an indication that there might be prejudice at work, it is too late, because the first indications of prejudice in an early 12(b)(6) dismissal such as this come only when the judge issues the judgment upon which the prejudice is inferred.

To put that another way, if prejudice is an issue which arises during a long course of pretrial proceedings, including discovery, depositions, and summary judgment proceedings; the victim of prejudice and bias will have some indications that it might be an issue while there is still time, discovery and Summary judgment to respond..

In this instance, I began to see the evidence of prejudice and bias in the Show cause order and Reports and Recommendations; but those were not the judges making the final ruling. They were playing a role as adversaries in the position that the defendants would

normally take. So I understood but objected because the role of Report and Recommendations is supposed to be an advisory role to the court; not an adversarial role against the plaintiff.

By the time the first judgments were issued though, Judge Vratil was adopting 100% of the arguments made by opposing counsel and by the judges in their adversarial positions even when contradicted by the evidence. And this gave the appearance of bias and prejudice. But  by that point I was suffering such escalating symptoms that I had to seek ER care on May 16th, 2022, and had to seek further neurological consultations, always to no avail because no one would treat the cysts.

The effect was that I was unable to write my intended Motions because of the effects of both the physical denials of medical care and the psychological trauma of abusive litigation. And because of that, I need to ask for this to be a rare exception where a new issue is raised upon appeal..

Even so, the issue is not entirely new. I did raise the issue of prejudice and bias in response to the Show Cause order and Motions to Dismiss. I just could not complete a motion once Judge Vratil demonstrated her reliance upon and agreement with the prejudicial allegations of opposing counsel and the magistrate judges. I was just too far gone both physically and psychologically by then.

Perhaps the biggest indicator of prejudice is the court's rulings on the subject of appointment of counsel; and specifically the magistrates arguments that because I can type, it proves that I am not incapacitated, not disabled, and not impaired in my ability to defend my rights. even though the judges were aware of the stabbing pains to the genitals and rectum, loss of bowel and bladder control, thunderclap headaches and intermittent paralysis; without even allowing an evidentiary hearing; they declared that my disabilities cannot be the explanation for my poor legal writing.

That is a factual determination which is completely contradicted not only by my allegations, but also by the medical evidence and medical science already on the record with the court. Tarlov Cysts notoriously affect people's ability to sit. And sitting without the support of my arms because I have to type as well magnifies the effects and accelerates the onset of the flare ups of unbearable symptoms caused by the cysts and other spinal damage that I have.

And the "ability to type" test for appointment of counsel completely ignores mental health disabilities and their effects on functional impairment directly related to the tasks

required for successful litigation. This is another very common form of prejudice and bias….the prejudice and bias against the mentally ill is commonly known to be worse that the prejudice and bias against those with more visible disabilities like paraplegia or loss of limbs.

A person can be perfectly capable of typing any number of pages, but be so affected by mental illness that the page counting is irrelevant. The disability which impairs the individual is mental, or both mental and physical, rather than merely physical.

then we had the judgment in the WorkMarket and Hartford et. Al. cases in which the court literally invented an alternative possibility and granted it as true; even though I had already proven it to be false. That was the recommendation and ultimate judgment that OnForce may have made available the option to purchase insurance from a third party; rather than force placing fees for insurance which does not and legally could not exist. In this we had the court granting an argument which was a fictional and hypothetical alternate explanation for what OnFOrce's business practice *might have been;* and a complete rejection of my allegation and the evidence of what it actually is.

The clear appearance is that the judges would not believe me, nor would they grant me a presumption of truth, even when I filed documentary evidence and what amounts to confessions from the two primary defendants in the WorkMarket and Hartford cases.

And I firmly believe that the prejudice is the result of the frauds upon the court; and most particularly the statement that none of the doctors consider me disabled, and Janet Gereau's slanderous allegation about me being an abusive spouse. I do believe that the all female selection of judges was particularly offended and believed the allegation of spousal abuse, and used their power and authority to retaliate against a man falsely accused without even granting me the opportunity to present evidence specific to that allegation.

With the doctors and OnForce and The Hartford, I anticipated what their arguments would be, and filed the evidence most critical to defeating those prejudices. But the allegation of abuse was so unexpected, that I never would have considered a need to preempt it in the pleadings.

And the fact that both the district court and the Tenth Circuit upheld the dismissal of the claims against Ms. Safford, Mr. Keck, and Mrs. Gereau without a single comment or reference to the difference in diversity jurisdiction and the nature of their claims as compared to the represented parties…these pro se defendants never even filed a legal

argument. Only a general denial and a slanderous allegation … the appearance of dismissal with no consideration or ruling as to the arguments specific to them. They merely inherited the arguments of the represented parties; and their presumed defenses were granted by the court without explanation or even a passing reference in the judgments.

It should still be apparent that there was no res judicata with respect to any of the defendants; but especially as to the pro se defendants who made no arguments for dismissal of their own, they waived any affirmative defenses which otherwise may have existed.

The court, in effect, by dismissing the claims against them did exactly what the court claimed it can never do for a pro se litigant: they rounded out and created from whole cloth entire defenses for the pro se defendants, and granted those defenses via dismissal without a single word of explanation or analysis.

This give the impression bias against pro se litigants common to many judges. As was the case with many of the disputes of law, the court adopted only those portions of Hall v. Bellmon which state that a pro se must follow all of the same rules as an attorney; while rejecting those portions of Hall v. Bellmon which say that the court must liberally construe pleadings, liberally grant leave to amend, and that a pro ses only expectation is to be able to recount the facts which give rise to relief, and thus the court is directed to ignore things such as confusion over legal theories, poorly organized thoughts and pleadings, In other words, the court cited and applied only the anti-pro-se portions of Hall v. Bellmon, while ignoring and not applying the accommodations to pro se litigants necessary to preserve due process and secure just outcomes for those without the means to afford counsel.

In similar fashion, the court very openly adopted only the anti-indigent portions of 28 U.S.C. 1915, such as the Report and Recommendations and Show Cause orders written and advocated by the judges; while rejecting the counter-balancing provisions of 1915 which authorize appointment of counsel for litigants with colorable claims, but without the means to hire an attorney and without the skill or even the physical or psychological ability to perform to the standards expected from attorneys.

In her judgments, Judge Vratil admits that she doesn't know if an attorney could have fixed the pleadings. But that is not the same as declaring that under no set of facts or no theory of law could these claims be justiciable. That is merely another way of saying the pleadings, motions and briefs are poorly written.

I argued and I maintain that in the role of magistrates in producing Show Cause and Report and Recommendations arguments; the judges had a duty to explore the issues neutrally, as if they represented both parties. The Report and Recommendations in particular also carries with it the duty to report recommended findings of fact, which none of the judges did. Rather, as cited above, they proposed only a hypothetical alternate version of the facts which was already disproven in response to WorkMarket's first Motion to Dismiss.

.In response the magistrates merely argued that I was mistaken that they owed any duty to Report and Recommend from a neutral perspective; thus affirming and adopting their adversarial positions which resulted in the recommendation that the court declare a patently false and disproven set of facts to be true.

### e.     FIfth Issue:

Does the Kansas Workers Compensation Act preclude any Federal jurisdiction over disputes between employers and workers, especially where the worker is not an employee and not a subcontractor, but only a consumer of their work order routing software and website?

Does the common law remedy of medical malpractice create an exclusive remedy and bar Federal jurisdiction over health care providers where the claims transcend mere negligence?

Could the state of Kansas even create a law which prohibits Federal Jurisdiction in any context under the principle of Federal Supremacy?

### Argument and Authorities:

I combined these questions because the legal issues are identical between the exclusive remedy/Federal preclusion arguments with respect to health care providers and medical malpractice law; and those with respect to "employers" and  workers compensation laws. In both instances, the defendants' arguments which the court granted was that the state law remedy is an exclusive remedy that precludes Federal jurisdiction.

With respect to doctors, medical malpractice was argued to be an exclusive remedy which precludes claims such as Racketeering, discrimination, or civil rights violations. But medical malpractice is not an exclusive remedy in Kansas, even with respect to other Kansas laws such as the Kansas Consumer Protection Act. This was affirmed in the case cited by opposing counsel of Robinson v. Shah, in which the Kansas Supreme Court found that Dr. Shah could be sued under a theory of fraud, because his acts of "negligence" was not in fact negligence, but was a long series of intentional frauds to conceal his prior malpractice..

Additionally, it is admitted implicitly by the court that a doctor can be held liable under breach of contact where the doctor promises a particular outcome. But that is not the only instance in which a doctor may breach a contract. A doctor could also breach contract by accepting an appointment, collecting payment, then refusing to perform services as was done by Dr. Williams, Dr. Hylton, Dr. McCowen and Dr. Clymer; or a doctor could breach their contract by accepting an appointment, collecting insurance and copays, and then providing only a sham examination, such as the two instances of ten second examinations that I experienced recently at Menorah Medical Center and Research Medical Center. They are examples of the principle expressed by Governor Sebilius in her veto of the health care provider exemption that was proposed to the Kansas Consumer Protection Act. As she sated, there are many ways in which a health care provider can do harm to a patient other than through negligence; and that includes traditionally "consumer" type claims like breach of contract and KCPA claims like deceptive or unconscionable acts and practices. The court had the analysis backwards…in order for the exemption for health care providers to apply, it must be shown that the true nature of the claim IS negligence a.k.a. "medical malpractice" rather than a consumer-style claim like fraud, breach of contract, or deceptive and unconscionable acts and practices.

But perhaps more directly relevant is the fact that no state can unilaterally declare its citizens or even a subset of it citizens to be immune to Federal law. And no judge can create such an exemption by declaration via case law or "judge made law." Only the Federal Congress can grant an exemption to a Federal law for a class of potential defendants such as doctors, or employers, or insurers.

And this is why the same arguments apply for the "workers compensation as an exlusive remedy" or exhaustion of remedies requirement.

While a state can create an exhaustion of remedies requirement for state and some

common law remedies; it has to do so explicitly by statute. And no such statute could declare an immunity from Federal liability.

The Kansas Workers Compensation Act does include some fraud provisions that may apply to the OnForce business model and to The Hartford's handling of my workers compensation claim. But the KWCA also declares who is protected by these unique fraud provisions, and it only applies to employees or independent contractors who elect to come under the statute with the filing of a form KWC-113.

not only was I not an employee, and not only did I not file a KWC-113, but OnForce was not even a primary contractor under whom I would have been considered a subcontractor. They are a company that operates a website that connect buyers and sellers of onsite services.

WorkMarket notable changed their practice after many years of advertising their insurance as "workers compensation" and only removing the fees ( which the State of Kansas prohibits). They eventually changed their practice to offer a third party underwritten "Occupational Accident Insurance" which is a well-known type of insurance commonly used by owner-operators in the trucking industry,. This change is of note because it not only demonstrates their knowledge that calling the insurance "workers compensation" was prohibited by Kansas and likely by most states; it is a type of insurance that could have been legally sold to me for a fee by OnForce or a third party which they know is not subject to workers compensation jurisdiction.

All of this does also apply to the issue of prejudice and bias, because it does appear that the court always presumed that I was subject to the workers compensation laws merely because I was injured at work, without looking at the specific facts of the case to determine if I actually was even subject to the workers compensation act at all.

And because the court presumed that I was subject to the workers compensation act, the court merely presumed the exclusive remedy argument to be true in all contexts, including with respect to concurrent violations of Federal law. And because the court presumed the general presumption of an exclusive remedy and exhaustion of remedies requirement; the court simply never considered or ruled upon the argument that a state cannot create that type of preclusion of Federal remedies
Again, the issues intersect *because* the prejudice is SO strong that the exclusive remedy  is just presumed to exist as to all claims where someone is injured at work, and to the preclusion of any claim other than a workers compensation claim; that

even judges do not think to check to see if the workers compensation act applies at all; or if the issues being precluded are Federal versus state.

**f.    Sixth  Issue: Every other argument conceivable. A.k.a. prevention of manifest injustice as allowed by Rules 59(e) and 60(d)**

This is an appeal to the equitable power of the court to grant relief so as to prevent manifest injustice where no argument is being willfully waived, or even unintentionally waived due to inexcusable negligence or some similar theory. Every argument that I have not included is one that I did not include because I am in too much pain to do this.

Can a person preemptively avoid a "waiver of rights" by openly declaring that they do not intend to waive rights, but any rights waived through omission are purely the result of the disabilities inflicted upon them by the defendants?

Can the court relieve a disabled pro se litigant of the consequences of their disability by appointing counsel and granting leave to file an amended brief?

**Argument and Authorities:**

I am literally writing this argument and raising this issue because it is a valid question, no matter how you decide it. The question itself is valid and perhaps critical in my circumstances. It also is relevant to the Rule 60(d) argument in which the commentary and intent of Rule 60(d) affirms that the court has nearly unlimited authority to prevent manifest injustice through the principles of equitable relief.

At this very moment, I am in so much pain that I cannot even think straight. And preparing and planning and attempting to write briefs for several months has not produced anything worthy of filing because I suffer these disabilities and especially the psychological trauma and the physical pain every single time I try to write legal briefs or pleadings.

I have been specifically traumatized by lawyers and judges for years, in multiple contexts, all of them inter-related with the claims against OnForce, The Hartford and Berkshire Hathaway.

The height of the trauma for the longest time was on December 15th, 2015, because on that day I was threatened with murder by The Supreme Court of Kansas. But at some point during these proceedings. The abusiveness of these attorneys and judges exceeded the psychological toll inflicted even by the threat of murder. I don't know how to say that. My fear of being murdered has at some point become less than my fear of being denied medical care for the rest of my life.

But that threat happened simultaneously to my symptoms escalating, the new discovery of the cysts, the very complex conspiracies to conceal Tarlov Cysts, and especially to conceal them from courts. On December 15th, before the murder threat was made, I had my highest hope in years, because I finally had the evidence of specific spinal damage that explained specific symptoms such as my stabbing pain to the genitals and rectum and the loss of bowel and bladder control.

But the point is that even in the face of a murder threat, I still had hope because I had medical imaging and evidence and I finally had an explanation Then slowly it was revealed to me that neurosurgeons and radiologist do actively conceal the Tarlov Cyst Diagnosis because they do not want to work on these cysts.

Once I realized that I was not going to be able to get the expert testimony required to pursue my rights against OnForce, The Hartford or anybody; my hope disappeared and I knew that what I thought was good, the discovery of the cause of my symptoms, was actually the worst thing short of cancer that could have been discovered in my spine. I knew after another year of doctors fraudulently denying my symptoms and creating false medical records that I not only had to eventually sue to get the compensation from OnForce and The Hartford, but first I was going to have to sue the doctors for their ongoing practice of lying to and lying about people with Tarlov Cyst disease.

Along with the escalation to my symptoms, the complexity of the necessary litigation skyrocketed; and the challenge of restoring my rights went from hopeful to impossible.

Even attorneys that I consulted with told me that it was just too much and too many interrelated claims and people. And those were able bodied attorneys with professional training and years or decades of experience.

And it was never that they thought that I did not have any rights to relief. It was always that the claims were too complex and it was too much of an entanglement to

unravel who was responsible for which portion of damages or even the simplest question of who was supposed to pay for my medical care.

It literally could not be avoided to sue everybody, because everybody could always try to put all of the blame on the other defendants. You would either get all of the defendants fighting and blaming each other; or more likely they would all gang up on the one weakest party, and that would be me.

Judge Vratil used an interesting phrase, She said that the court gave me a "road map" and I did not follow it. The problem is that you could give me a roadmap to a marathon and it would be equally useless to me because I cannot do the physical work of litigation or endure the psychological trauma of litigation any more than I could run 23 miles in a day. I am just that broken.

I will continue to try, but I will fail; and when I fail I will lose my access to health care forever. I cannot afford to risk the loss or unintentional waiver of any right to relief. But I cannot avoid losing all of my rights to relief because of the damage that all of these defendants have done to me.

**4.   Do you think the district court applied the wrong law?  If so, what law do you want applied?**

The court misapplied jurisdictional law in dismissing the state law claims against the pro se defendants, Michelle Safford, Janet Gereau and Jonathan Alan Keck II. Once the other defendants were dismissed and the links to them under theories of conspiracy, racketeering, etc. were severed; the pro se defendants stood alone on the state law and common law claims. Because the pro se defendants were all residents of Missouri, diversity jurisdiction applied to the claims which were no longer subject to Federal Question jurisdiction. Those claims should have never been dismissed, and were not even discussed in the court's judgments or in the Tenth Circuit's judgment  on January 29th, 2021.

And for the exact same reason, those claims should not have been dismissed this time. No res judicata has ever taken place with respect to the out-of-state pro se defendants.

And most importantly, the pro se defendants filed no defenses at all. What they filed was merely a general denial of facts and a slanderous allegation which I believe severely prejudiced the court against me. (The allegation of spousal abuse.)

Because they raised no defenses, they waived all defenses, and the only defenses left were disputes of fact subject to trial by jury.

Then, at the Tenth Circuit, the Court of Appeals did the exact same thing…upholding the dismissals of the pro se defendants without saying a single word about them. In essence, these defendants simply inherited the dismissals of the represented parties,  because…no reason, just because. No reason was given in either the District or Court of appeals judgments.

Also, because there was no evidence based ruling on the tolling and estoppels questions, no statutes of limitations has expired or can even accrue. I am legally incapacitated, even though I can type. The legal standard is not the same as the common language usage of the term "incapacitated." It's not just can you receive and communicate information. It is can you do so at a level sufficient to provide for your own sustenance, and even explicitly for medical care. For example, a person who is legally insane might very well be able to type voluminous amounts of legal pleadings; yet still be legally incapacitated. And that same incapacity would also prevent that person from engaging in employment, providing for their daily needs, caring for their own health and safety, , obtaining medical care when required, etc.  I am a very good example of this.

They literally have to remove my disabilities before any statutes of limitations can accrue.

And even if the court disagrees and accrues the time; there is still the argument for estoppel, because my disabilities are caused and being perpetuated by the defendants. In other words, even if my disability is ruled by the court to be something less than "incapacitated", the fact that my more than 88% functional impairment and my very specific to litigation abuse mental illness are caused by the defendants themselves warrants estoppel. They cannot justly be allowed to profit from the disabilities that they caused AND are refusing to cure.

And this is the point at which the pro se/out-of-state defendants' dismissals crosses paths with the dismissals of the other defendants. If Federal question jurisdiction is reestablished via the appellate process; then the same arguments apply to all of the defendants regarding estoppel and tolling of statutes of limitations.

So, first, the court applied the wrong law regarding jurisdiction to the diversity defendants; then the court applied the wrong law regarding estoppel and tolling of statutes of limitations. And perhaps the most actionable incorrect application of law was that the court ruled without allowing evidence on issues which required resolution of the disputes of fact first.

In the Report and Recommendations, at least one of the magistrates explicitly wrote that she would not dismiss the claims on the basis of statures of limitations. This was written only in a footnote, with no explanation. But the explanation can be inferred from the arguments made in the previous Motions to Dismiss filed by the defendants themselves. She appears to be acknowledging that the statutes of limitations tolling and estoppel questions have potential merit and can only be legally resolved after resolving the disputed facts. And the presiding judge made it two out of five judges that agreed when she accepted the Report and Recommendations. And if two out of the five judges would reject the statutes of limitations defense, then it is plausible and non-frivolous.

And perhaps most importantly of all, my odds go up when I am allowed to present evidence and testimony. You can't spend an hour with me, or even in my presence without recognizing my severe disabilities. A jury will spend days or even weeks witnessing the torture that litigation is to me.

I also intend to call expert and lay witnesses, including both physicians who agree with me, mental health professionals who have evaluated and diagnosed me, and friends and even, my family, who have actually witnessed my pain and do not deny that my pain is real. They are just opposed to workers compensation and opposed to litigation and personally retaliating against me to exploit my disabilities for their shared profit and gain. But the level, nature, and effect of my disabilities can and will be proven; and is very much discernible from the poor quality of my pleadings and briefs.

Next, the court misapplied the "in pauperis statute" section 1915. In particular, the court only applied the part that allows dismissal of poorly written claims; but did not apply the part that allows for appointment of counsel to prevent the wrongful dismissal of valid claims solely because the indigent plaintiff could not do the tasks of legal writing. Obviously, this has some cross-over to the disability related aspects of the statutes of limitations claims, so I will try to keep this one more brief. Incorporating all of that stuff about my disabilities the court should have applied the entirety of section 1915; in which case counsel would have been appointed, the pleadings would have been properly written, and even the appellate briefs would have been properly written, which would have restored the Federal Question jurisdiction under the ADA, RICO, and Civil Rights Acts.

Every Rule 8 and Rule 9 argument would have gone away with professionally written pleadings. This would have left mostly factual disputes, subject to trial by jury rather than dismissal. Every missing element of claims would have been included. And things would have been properly organized, thus addressing Judge Vratil's "too much of the wrong things" argument, as well as her not knowing which facts go with which claims argument. That argument was purely one of organization of the pleadings, and not one of fact or law.

And the only legal argument that would not have been instantly resolved would likely be the Civil Rights Act argument, as the "racial animus" requirement comes from higher up in the court. So that one the District Court and possibly the Tenth Circuit would have likely upheld the racial animus question; but it would have been properly briefed, which would have triggered a proper review of the legislative history which mitigates against a racial animus requirement.

As for the ADA, a properly written pleading and briefs would have established that yes, in fact, the discrimination alleged IS on the basis of Tarlov Cyst Disease, and the health care provider exemption as originally expressed in Johnson by Johnson v. Thompson would not have even needed to be overturned, because it does not apply where the provider discriminates against everyone with the disease.

And as for RICO, the "enterprise" and "conspiracy" arguments were declared "conclusory allegations" rather than being dismissed on the merits. It wasn't that conspiracies and enterprises did not exist. It was that I did not plead them properly. Appointment of counsel would have cured that.

So if the court had applied the portion of Section 1915 which authorizes appointment of counsel, in conjunction with the evidence of my disabilities; the judgments of the court would have been vastly different, at the very least, with professionally written pleading of the exact same facts and legal theories.

The court only considered the court's own interest in reducing the costs of litigation and the defendants interests in not having to pay lawyers a second time in the KU case or even having to pay lawyers the first time in The Hartford case. Yes, preventing them from wasting private resources on frivolous litigation defenses is an interest. But you have to balance it against something to do a balancing of interests. And what it is balanced against is my disability and my survival. So my life weighs higher in the balancing of interests than a corporation's money. And because my life is inherently of greater interests than the small percentage of their annual revenues that they will spend defending their interests and attacking mine; dismissal would only be appropriate if this were one of those extremely frivolous and ridiculous lawsuits like those cited in the legislative history of the PLRA. A prisoner suing to get more peanut butter on his sandwich is frivolous. A disabled man suing to get medical care to prevent permanent disability and death is not.

court should have applied Hall v. Bellmon rather than Ashcroft v. Iqbal.

The court should have applied Rule 54(c) and even Rule 11 rather than Rule 8 and Rule 9

The court should have applied Rule 60(d) even where the court rejected Rule 60(b) grounds for relief.

I hope you can see that deep within these writings are the pearls of legal theories, surrounded by all of my stinky clam meat of pleadings and ramblings and such.


**.5.  Did the district court incorrectly decide the facts?  If so, what facts?**

First and foremost, the District Court wrongly decided the nature, level, and effect of my disabilities with respect to the Motion to Appoint Counsel. No decision, not even the denial of appointed counsel, which was based upon my level of disability and the effects of my disabilities upon my legal rights should have been made without an evidentiary hearing, and I did request evidentiary hearings and that request was denied. And it should have been obvious that no ruling as to my disabilities could be made without such opportunity for evidence presentation.

The court also wrongly decided the factual disputes at the foundation of the ADA interpretation that excludes health care providers. Even Johnson by Johnson v. Thompson, the Tenth Circuit Decision which applied the "otherwise qualified" language of the RA to the ADA admits that the exception to the health care provider exemption would be when they discriminate against everyone with the same disease. In dismissing my claims under the ADA, the court not only used the language and case law of the RA to modify the ADA in a very substantial way (because the term "otherwise qualified was omitted from Sections II and III of the ADA); but the court by dismissing my claims inherently ruled that the discrimination was NOT on the basis of the disease; when that was a dispute of fact to be litigated.

The court also continued this pattern of ruling contrary to the facts established by evidence as stated above with respect to the nature of the OnForce insurance. It was not a third party underwritten policy merely offered and sold through their website. It was a contract for workers compensation benefits in the event of injury or disability between myself and OnForce directly. And that contract was both illegal, and not subject to the workers compensation act, because they are not an insurer and I was not an employee. Hence ruling that I purchased a separate insurance policy not only contradicted the evidence, but also created two alternative theories of defense, neither of which was legally supported.


**6.  Did the district court fail to consider important grounds for relief?  If so, what grounds?**

**7.   Do you feel that there are any other reasons why the district court's judgment was wrong?  If so, what?**

**8.   What action do you want this court to take in your case?**

I would like the court to grant relief from judgment and order the District Court to assess my disability and my need for appointment of counsel according to the medical facts, with the expectation that able bodied and professionally trained attorneys could properly and even completely file the same arguments but with properly written pleadings and the entire path and outcome of the case would be different..

**9.   Do you think the court should hear oral argument in this case?  If so, why?**

I know I do not demonstrate this in my writing, but I actually am an intelligent man. And if the court had held oral argument, the court could have controlled the flow of argument. I would not demand that the court grant me time just to hear me repeat the things I've said so poorly. I would ask the court to grant oral argument and ask me the questions that are relevant to the decisions that you are inclined to make.

_____          _____
Date                                                            Signature

**A-12**  Appellant/Petitioner's Opening Brief – 12/16                    **Page 34**

## CERTIFICATE OF SERVICE

**I hereby certify that on** _____ **I sent a copy of**
(date)
**the Appellant/Petitioner's Opening Brief to** _____

_____ **, at** _____
(Opposing Party or Attorney)
_____ **, the last known address/email**

**address, by** _____ **.**
(state method of service)

_____          _____
  1/4/23
Date                    Signature

---

## CERTIFICATE OF COMPLIANCE

**I certify that the total number of pages I am submitting as my
Appellant/Petitioner's Opening Brief is 30 pages or less or alternatively, if the total
number of pages exceeds 30, I certify that I have counted the number of words and
the total is    12,983    , which is less than 13,000.  I understand that if my
Appellant/Petitioner's Opening Brief exceeds 13,000 words, my brief may be
stricken and the appeal dismissed.**

_____          _____
  1/4/23
Date                    Signature